165 So.2d 662 (1964)
Jefferson K. ALKEN, Sr.
v.
MORAN MOTOR COMPANY, Inc.
No. 6130.
Court of Appeal of Louisiana, First Circuit.
June 1, 1964.
Joseph H. Kavanaugh, Baton Rouge, for appellant.
Parker & Parker, by Donovan W. Parker, Baton Rouge, for appellee.
*663 Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
This is an action in redhibition wherein plaintiff, Jefferson K. Aiken, Sr., seeks rescission of the sale of a 1961 Plymouth automobile purchased from defendant, Moran Motor Company, Inc., on August 30, 1961. In essence plaintiff contends the vehicle, admittedly a demonstrator, represented as having low mileage, was in effect a new car and was sold and expressly warranted as a new automobile. Plaintiff further alleges the vehicle was defective at the time of purchase, the nature of the defects being such that the vehicle was unfit for the purpose intended and had he been aware of their existence, he would not have purchased the automobile. After trial below the lower court rendered judgment rejecting and dismissing plaintiff's prayer for rescission of the sale but awarded plaintiff damages in the aggregate of $969.42, representing $469.42 expended by plaintiff in repairing the vehicle and $500.00 for inconvenience, worry and annoyance resulting from the failure of the vehicle to operate properly.
From the aforesaid judgment defendant has appealed contending our learned brother below erred in (1) finding the vehicle defective at the time of sale; (2) awarding plaintiff damages for the repair of the vehicle notwithstanding plaintiff declined to afford appellant opportunity to effect the necessary repairs; (3) granting plaintiff the sum of $500.00 in damages for alleged worry, annoyance and inconvenience; and (4) concluding a reduction in price was warranted notwithstanding plaintiff's failure to establish the defective nature of the vehicle at the time of purchase and refusal to afford appellant opportunity to effect repairs which became necessary subsequent to the date of purchase.
Plaintiff has answered the appeal contending the trial court erred in failing to rescind the sale and order the return of the purchase price and also award plaintiff damages and costs, as prayed for. More precisely, plaintiff, in answering defendant's appeal, maintains the trial court erred in refusing to order rescission of the transaction on the ground the vendor was not in bad faith thereby making the bad faith of the seller a condition precedent to an action for rescission contrary to established jurisprudence. Plaintiff also avers our esteemed colleague below erred in declining to hold defendant guilty of bad faith on the ground the trial court was convinced of the good faith of some of defendant's agents. Finally, plaintiff maintains error was committed below when the trial court declined to rescind the sale and order the return of the purchase price to plaintiff together with damages, the value of repairs made by plaintiff and costs, all as prayed for in plaintiff's petition.
Except as hereinafter otherwise noted, the circumstances surrounding the sale of the vehicle to plaintiff (appellee) are not in dispute. On August 30, 1961, appellee and his wife went to defendant's establishment in the City of Baton Rouge to purchase a new automobile. Defendant (appellant) had no new cars in stock but did have a 1961 Model Plymouth which appellant had on hand since September 29, 1960, and which had been used as a "demonstrator" by defendant's salesmen and employees. Defendant's president, Ralph Moran, represented the vehicle in question as having low mileage and being, for all practical purposes, a "new automobile." Moran further agreed the vehicle would be sold as a new car and expressly warranted it is writing as such. The price having been fixed, it was further agreed that for an additional $40.00 the air conditioner would be taken out of plaintiff's 1958 model car (to be traded on the new purchase) and installed in the 1961 model car as plaintiff desired an air-conditioned vehicle and the "new car" was not so equipped. Upon installation of the airconditioner and the making of certain other minor adjustments, appellee accepted delivery of the vehicle.
*664 Following the sale plaintiff commenced experiencing difficulty with the vehicle's brakes and with the engine knocking and overheating. There is some dispute between the parties regarding the time these defects became manifest. Appellant maintains the car was not defective at the time of sale whereas appellee contends the defects became manifest the day following his purchase at which time appellee observed the engine to be making loud noises.
It is conceded plaintiff returned the vehicle to appellant on numerous occasions following its purchase and that ultimately in May, 1962, it was agreed defendant would perform a "semi-overhaul" of the car in order to prevent its overheating.
In December, 1961, when appellee had driven the car less than 3,000 miles one of the tires blew out as he was starting on a vacation trip. Pursuant to the warranty issued at the time of sale, appellee sought adjustment of the tire and upon its inspection by the local representative of the manufacturer was informed 45% of the tread was worn away notwithstanding the speedometer showed less than 3,000 miles and the expected life of such tires was 20,000 miles under normal use. Shortly thereafter a second tire similarly failed and upon returning to the same manufacturer's agent, the remaining tires were discovered to be so worn appellee considered them unsafe and decided to purchase new tires for the car. After considerable discussion during which a concession was admittedly made to appellee because he is an Episcopal Minister, appellee was given new tires for the approximate sum of $6.00 each.
In essence plaintiff, his wife and son testified the automobile was a source of trouble, annoyance and frustration commencing the day following its purchase. They testified the car was hard to start, misfired frequently, the engine made loud objectionable noises, the brakes did not function properly but "squealed, pulled and jerked" and the engine "ran hot" to such extent it was necessary to constantly put water in the radiator notwithstanding which the engine frequently overheated, especially when the air-conditioner was in use.
Matters reached the breaking point, however, in May, 1962, at which time the vehicle, having approximately 8,000 miles on its speedometer, became overheated and was towed to defendant's establishment in inoperable condition. Following discussions between appellants, Ralph Moran and his assistant, S. E. Walker, it was agreed the engine of the automobile would be disassembled for inspection to determine the cause of its overheating and the damage, if any, resulting therefrom. The vehicle was left in defendant's shop, the cylinder head removed from the engine and the motor dismantled and inspected. Before any repairs were attempted, appellee brought a mechanic-acquaintance, John Parker, to defendant's establishment to view the motor and consult with defendant's employees about the needed repairs. It was agreed the engine would be repaired and put in first class working order by replacing all parts affected by the overheating. In essence, it was agreed the engine would be virtually rebuilt by replacing the pistons, rings, main bearings, valve lifters, rod bearings, repairing or replacing the fuel pump and cleaning the cooling system. Plaintiff was informed some of the parts would have to be ordered to effect the repairs and that the rebuilding process would take approximately a week to ten days. One or two days thereafter plaintiff returned to defendant's establishment to check on the progress of the work and was astonished to learn the motor had been already repaired. Feeling apprehensive about the work being accomplished in such a short time, plaintiff demanded to see the removed parts in order that he could check them against the list he made at the time the engine was inspected by his acquaintance, Parker. A rather heated discussion ensued between plaintiff, Moran and defendant's employee, Terry Farris, culminating in plaintiff driving the car away with the explanation he was not accepting the *665 repairs. Farris states he advised plaintiff the motor repairs had been completed but that the car was not "ready" as it had not been tuned up or road tested, notwithstanding which plaintiff left with the vehicle. Plaintiff denied Farris told him there was yet to be done some work on the car such as tuning it up.
Plaintiff maintained possession of the vehicle and continued to have trouble with its engine, brakes and cooling system. The vehicle was a source of constant frustration and disappointment in that the engine stalled and overheated, it lacked proper pick-up, the brakes malfunctioned and it used excessive oil and water. Subsequently plaintiff had the engine completely overhauled and expended the sum of $464.92 on this and repairs to the vehicle's brakes and other components.
Of considerable significance is certain evidence appearing of record which we believe explains to a large degree the reason the car was prone to overheating. It is conceded by defendant's mechanics that to aid in cooling the engine, factory airconditioned cars are equipped with a fan different from that installed in a car which leaves the assembly line without air-conditioning. It is likewise conceded defendant did not recommend a change in the fan and neither did it change the fan when it installed the air-conditioner from defendant's old car in the new vehicle. The conclusion is inescapable, therefore, the fan on plaintiff's vehicle was not adequate to cool the engine of an air-conditioned automobile. The conclusion is amply justified by the unsatisfactory operation of the vehicle as hereinabove shown.
Another significant fact is that when the engine was dismantled for repair by defendant in May, 1962, it was discovered the valve lifters on one side of the engine were of a different make than those on the other bank of cylinders. To plaintiff's expert, Parker, this indicated the motor had been previously repaired because in all his years of experience he had never known of an instance wherein a motor came off a manufacturer's assembly line with a mixed brand of valve lifters installed therein. Although defendant's representatives denied the motor had been repaired to their knowledge, each (some three or four in number) testified this was the only instance in their experience wherein they observed a difference in the brand of valve lifters factory installed in a single engine.
We have no hesitancy in reaching the same conclusion as our learned brother below, namely, that the vehicle was in fact defective at the time of its sale to plaintiff. In view of the evidence of record herein it is unnecessary to determine whether the defect manifest itself within three days of the sale because we unhesitatingly hold plaintiff has discharged the burden of establishing the defective condition of the automobile at the time of sale irrespective of whether the defects manifested themselves within three days of its purchase.
In this regard the evidence discloses the hereinabove mentioned circumstances regarding the fan. It further appears that during the eleven months defendant used the vehicle as a demonstrator minor repairs were made on four occasions, one involving the brakes. It also appears that the brakes on the car gave trouble almost from the day of its purchase and even though the car was "new", plaintiff brought it to defendant for repair of the brakes as early as November, 1961.
Defendant's president concedes that at the time of sale he advised plaintiff the car had only been driven a few miles. Upon testifying at the trial, he frankly admitted that vehicles used as demonstrators were usually sold after being so employed for about four months and having been driven between 3500 and 4500 miles. He also admitted the vehicle in question had in all probability been driven at least 3500 miles prior to its sale to appellee. It is to be noted the vehicle in question had been used by defendant not four months but eleven months prior to its purchase by plaintiff.
*666 We believe, however, our learned brother below erred in refusing to rescind the sale because he found defendant's president and other of defendant's employees in good faith with respect to the condition of the car at the time of sale.
Bad faith on the part of the vendor is not a condition precedent to rescission of a sale for redhibition. An action in redhibition lies notwithstanding the good faith of the vendor where the thing sold lacks a quality it was represented to possess, if the quality concerned was the principal motive for making the purchase. LSA-C.C. Article 2529.
The vendor unaware of vices in the thing sold is liable only to restoration of the price and reimbursement of expenses occasioned by the sale as well as expenses incurred by the purchaser in preserving the object of the sale. LSA-C.C. Art. 2531.
It is also settled jurisprudence that where the object of the sale is so defective or imperfect, if not absolutely useless, it must be supposed the purchaser would not have bought it had he known of the vice, rescission is in order despite the vendor's ignorance of the defect. LSA-C.C. Art. 2520. Thus in Stracener v. Nunally Bros. Motor Co., 11 La.App. 541, 123 So. 911, the sale of an automobile was rescinded because the vehicle possessed a scored cylinder and a broken differential gear unknown to the vendor. The same result was reached in Savoie v. Snell, 213 La. 823, 35 So.2d 745, which involved an automobile having a crack in its engine block.
The record clearly establishes the vehicle in question was represented as having qualities it proved not to possess. The vehicle was warranted as being in first class mechanical condition the same as a new car and was sold with a new car warranty. It was warranted as having been driven only a few miles whereas it appears it was driven at least 3500 miles prior to its sale. On this point plaintiff and his wife testified that when they inquired as to the mileage on the car, neither Mr. S. E. Walker, assistant manager, nor Mr. Ralph Moran, president and manager, was able to tell them exactly how many miles the automobile had been driven. According to plaintiff and Mrs. Aiken, Mr. Moran called in his son, who Mr. Moran said had been driving the car, and asked his son how many miles the car had been driven. Mr. Moran's son told his father in the presence of Mr. and Mrs. Aiken, the car had only been driven eight or nine hundred miles. This testimony was uncontradicted although Mr. Moran testified he did not remember representing to the plaintiff that the automobile had only been driven eight or nine hundred miles. It was his recollection that he said it had been driven only a few miles. In addition, the record justifies the conclusion the brakes, motor and cooling system were inadequate or defective at the time of plaintiff's purchase, therefore, it must be supposed that plaintiff, who desired a new car and thought he was in fact purchasing what amounted to a new vehicle, would not have consummated the transaction had be been aware of the true condition of the automobile. Plaintiff is clearly entitled to rescission of the sale, return of the purchase price paid and refund of the sum spent in repair of the vehicle. LSA-C.C. Article 2520.
The evidence further establishes that defendant's employees were in bad faith in that they had knowledge of the defects and vices. It also establishes that defendant's officers and employees knew the automobile did not have the qualities which it was declared to possess. Under these circumstances plaintiff is entitled to damages. LSA-C.C. Articles 2545 and 2547. The latter article makes reference to the rules under the title "Of Conventional Obligations." According to the provisions of LSA-C.C. Article 1934, particularly subdivisions 2 and 3 thereof, except where the contract has for its object the gratification of some intellectual enjoyment or some convenience or other legal gratification, *667 damages must be assessed by calculating the pecuniary loss or the privation of pecuniary gain. The only pecuniary loss suffered by the plaintiff proved by competent evidence in the record is the sum spent in the repair of the vehicle. Plaintiff is entitled to judgment for this amount.
Although the plaintiff in his answer to the appeal asks also for attorney's fees, in brief he merely asks for affirmance of the trial court's award of $500.00 for worry, inconvenience and annoyance. As a general rule attorney's fees cannot be awarded as an element of damages, except where the contract between the parties or the statutory law specifically so provides. Plaintiff, having failed to show entitlement to attorney's fees by means of a contractual provision or statute so providing, may not recover such item of damages.
With regard to the award for worry, inconvenience and annoyance, unless these items can be translated into a calculable pecuniary loss, as for example where the buyer is required to rent a car to use in place of the defective vehicle, no amount may be recovered therefor. This case does not come under the exceptions of LSA-C.C. Article 1934, subd. 3.
Nor do we find any merit in the contention plaintiff should not prevail because he declined to permit appellant an opportunity to make the necessary repairs. Under the circumstances shown herein, we find plaintiff was more than patient in affording appellant opportunity to remedy the defects exhibited by the automobile in question. In this regard it further appears the work done on the vehicle's engine by defendant obviously did not produce the desired results inasmuch as plaintiff was subsequently required to expend a considerable sum to have the same work redone.
For the foregoing reasons the judgment of the district court is reversed in part and affirmed in part, and judgment rendered herein in favor of plaintiff and against the defendant, rescinding the sale of the automobile, and ordering the defendant to return the purchase price of $2,845.00 to the plaintiff. It is further decreed that there be judgment herein in favor of plaintiff and against the defendant for the sum of $469.42, together with interest at 5% per annum upon both sums from date of judicial demand until paid, and for all costs.
It is further decreed that plaintiff return and surrender possession of the vehicle in question to defendant-appellant who is hereby declared its lawful owner with full right to have said vehicle titled in defendant's name.
Amended and affirmed.