282 So.2d 852 (1973)
C. C. MOREAU, Plaintiff and Appellee,
v.
MARLER FORD COMPANY, INC., Defendant and Appellant.
No. 4284.
Court of Appeal of Louisiana, Third Circuit.
September 18, 1973.
*853 Gravel, Roy & Burnes, by Robert L. Royer, Alexandria, for defendant-appellant.
Kramer & Kennedy, by Ralph Kennedy, Alexandria, for plaintiff-appellee.
Before FRUGE, SAVOY and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
On December 31, 1971, plaintiff and a salesman for defendant, Dwane Murray, concluded their negotiations leading up to the purchase of a new pick-up truck by plaintiff from defendant. On that date plaintiff gave defendant, through Murray, his check in the amount of $1,253.73, the precise cash balance shown to be due for the new truck, after deducting the amount allowed plaintiff for the truck that he traded in, on an invoice prepared by defendant. Plaintiff did not then take possession of his new truck, however, because it had suffered minor damage in transport and defendant was to repair that damage.
On January 10, 1972, plaintiff returned to defendant's premises and attempted to take possession of the new truck, but defendant refused to deliver the truck until plaintiff paid an additional $578.09. That sum represented the estimated cost of repairing the truck that plaintiff had agreed to trade in, as it had been involved in an accident prior to the December 31, 1971, transaction, and was in need of repairs. Plaintiff refused to pay the additional sum and successfully sued for specific performance, i. e. delivery of the new truck, plus damages for humiliation, inconvenience, etc., and for the diminution in value of the truck while he was deprived of its use. Defendant appealed to this court and plaintiff answered the appeal seeking an increase in the damages awarded.
The evidence shows that on December 16, 1971, plaintiff went to defendant's premises for the purpose of obtaining an estimate of what it would cost to repair his 1971 Ford pick-up truck. While there he engaged in negotiations with Dwane Murray to the end of trading in his 1971 truck for a 1972 model. The bargaining continued and on December 31, 1971, an agreement was reached. The precise terms of that agreement constitute the question before this court.
Plaintiff's version is that the full price and method of payment agreed upon are as represented by the invoice which defendant prepared on December 31, 1971, and gave to plaintiff. Thereon it states that the price of the new truck was $4,925.00 from which excise tax in the amount of $330.09 was deducted, as well as the sum of $3,391.77, representing the trade-in value of the 1971 truck. Sales tax in the amount of $36.09 and license and title fees amounting to $14.50 were added, for a stated cash balance of $1,253.73. A draft in that amount bearing the date December 31, 1971, was prepared by Murray and signed by plaintiff. Defendant negotiated the draft and mailed plaintiff his owner's manual and other documents pertaining to the 1972 truck.
Plaintiff stated that the reason the sale was made on December 31 was the desire of defendant to make all possible sales during the year 1971 in order that it might win a contest sponsored by Ford Motor Company. He explained that the trucks did not trade hands on that date only because *854 certain minor repairs were to be made on the new truck prior to delivery.
Defendant, while not denying any of the foregoing facts, disputes plaintiff's testimony that the entire bargain was as represented by the invoice given to him. Its version is that plaintiff had agreed on December 31, 1971, to pay for the repair of his old truck, and that when he returned on January 10, 1972, to pick up the new truck, he refused to comply with his prior agreement. Accordingly defendant refused delivery of the new truck and tendered its check in the amount of $1,253.73 to plaintiff in an effort to cancel the sale.
That there was in fact a sale of the 1972 truck is a conclusion that we have no difficulty in reaching. Both parties testified that there was a sale, that the specific truck to be sold was identified, and that the price was agreed to. This is in full compliance with Louisiana C.C. Art. 2456 which provides as follows:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
The question of who was to finance the repairs to the trade-in truck was resolved by the trial judge in favor of plaintiff, and we opine that the evidence supports his determination. Besides that which has hereinabove been set out we consider other evidence to be indicative of the correctness of plaintiff's position.
At the trial of the case, on October 26, 1972, Mr. Murray testified that the then value of plaintiff's 1971 truck was approximately $3,400.00. That figure was derived from the N.A.D.A. book commonly used by automobile dealers in determining used car values for vehicles in average condition.
Obviously the same truck would have been worth considerably more on December 31, 1971, some ten months earlier, yet the trade-in value was set out in the invoice at $3,391.77. This seems to us to indicate that defendant considered the cost of the needed repairs in setting the trade-in allowance. In addition we note the testimony of one David Roberts, a salesman for defendant, which, although rather vague, was to the effect that defendant had prepared a draft in the amount of $1,253.73 to give to plaintiff, prior to his arrival at defendant's premises on January 10, 1972. If defendant expected plaintiff to pay an additional sum prior to taking possession of the 1972 truck as testified to by its witnesses, we are at a loss to understand why it would prepare the draft prior to his refusal to do so. If the refusal was expected by defendant, it would certainly indicate that plaintiff had not agreed to pay any additional sums. (In all fairness we note here that Mr. Roberts also testified that Mr. Murray and plaintiff had discussed the matter by telephone during the interval between December 31 and January 10, but such was in conflict with the testimony of plaintiff and not corroborated by Murray or anyone else.) Finally it occurs to us that since defendant's agent prepared the original draft which plaintiff signed and gave in payment of the cash balance due, and the cost of the repairs was known at the time of that transaction, it is highly unlikely that the amount needed for the repairs was intended by the parties to be paid by plaintiff, as if such were the case the logical thing would have been to add it into the draft. We therefore conclude that the intention of the parties was that the 1971 truck should be traded in as it was, and plaintiff owed no further payment to defendant.
The trial court awarded plaintiff the sum of $1,000.00 as damages for the diminution in value of the truck while he was deprived of its use. The evidence is clear that plaintiff was deprived of his vehicle *855 while defendant held it in storage, where presumably it remains to this day. There is ample evidence for this allowance. LSA-C.C. Art. 1934.
Plaintiff was awarded the sum of $250.00 for humiliation, inconvenience, and anxiety in connection with the deprivation of the use of the vehicle. As previously stated, this is a suit for specific performance, and involved the breach of a sales contract. We feel that the contract is not of the type which allows for damages of this nature. Since the contract does not fall within the exception of Art. 1934, only items translated into a calculable pecuniary loss may be recovered. LSA-C.C. Art. 1934(3). Aiken v. Moran Motor Company, La.App., 165 So.2d 662; DiGiovanni v. April, La.App., 261 So.2d 360; Tauzin v. Sam Broussard, Inc., La.App., 283 So.2d 266. Accordingly, the judgment of the trial court allowing the sum of $250.00 for these items will be amended so as to delete that sum therefrom.
Defendant raises a valid complaint about the trial court's judgment in pointing out that while it orders defendant to deliver the 1972 truck to plaintiff, it does not order plaintiff to deliver the 1971 trade-in truck to defendant. That the older truck should be traded in as part of the purchase price of the new truck was clearly part of the bargain and therefore such should be required of plaintiff.
For the above and foregoing reasons the judgment of the District Court is amended so as delete therefrom the sum of $250.00 awarded plaintiff for humiliation, inconvenience, and anxiety, and is further amended so as to order plaintiff, C. C. Moreau, to deliver to defendant, Marler Ford, Inc., that certain 1971 Ford pick-up truck bearing serial number F10YLL46242 contemporaneously with his receipt of the 1972 Ford truck described in the judgment, and as so amended it is affirmed. Defendant is to pay all costs of this appeal.
Amended and affirmed.