300 So.2d 641 (1974)
Douglas H. GREENBURG, Plaintiff-Appellee-Appellant,
v.
N. C. FOURROUX, Jr., et al., Defendants-Appellees-Appellants.
No. 4635.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1974.
Rehearing Denied October 10, 1974.
Writ Refused November 22, 1974.
*642 Douglas H. Greenburg, in pro per.
Ronald E. Dauterive, Lafayette, for defendants-appellees-appellants.
Before HOOD, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Douglas H. Greenburg brought this suit against N. C. Fourroux, Jr. and his wife to rescind the sale of a Giant Schnauzer puppy because of a redhibitory vice. From a judgment in favor of the plaintiff both plaintiff and defendants have appealed.
The record shows that on December 16, 1973, plaintiff read an advertisement in a Baton Rouge newspaper for the sale of Giant Schnauzer puppies. Plaintiff telephoned the listed number in response to the advertisement and spoke with Mrs. N. C. Fourroux, Jr. who represented herself to be the owner of the puppies advertised. The following day the plaintiff, his wife, and two friends drove to the defendants' residence in Milton, Louisiana, where they were shown a litter of six Schnauzer puppies. At this time Greenburg gave Mrs. Fourroux a one-hundred dollar ($100.00) check as a deposit on one of three males in the litter, to be chosen when the puppies were about six weeks old. Subsequently on January 3, 1973, plaintiff, his wife, and a friend drove to the Fourroux residence to choose and pick up one of the puppies. Upon arrival Mrs. Fourroux brought out two or three male puppies, one of which was less active than the others. Mrs. Fourroux, however, explained that this particular puppy had superior characteristics over the others and that it was not unusual for a puppy to be less active at times. She also told the plaintiff that the puppies had recently been wormed for hookworms. Thereupon plaintiff chose the less active puppy and paid Mrs. Fourroux an additional $100.00.
Plaintiff thereafter journeyed back to his home in Baton Rouge and upon arrival found the puppy to be quite sluggish, but believed it to be only tired from the drive. About 5 o'clock A.M. the following morning, January 4, the puppy however was unable to walk more than a few steps at a time without falling. Plaintiff and his wife became alarmed and brought the puppy to a local veterinarian, Dr. Roger F. Foote, early that same day. Doctor Foote *643 examined the puppy, found it to be moderately to severely anemic, and administered vitamins and an appetite inducer. Plaintiff called the Fourroux residence that same afternoon to report the problem. Mrs. Fourroux thereafter consulted her veterinarian who told her that under the conditions as explained the puppy should be administered blood. She relayed this information on to the plaintiff. Late that evening, about 11 P.M. the puppy became more immobilized and Doctor Foote was again contacted. The next day, January 5th, he ran extensive tests hoping to isolate the problem and administered blood to the puppy. Mrs. Fourroux was again telephoned on this day and told of the puppy's condition.
Mrs. Fourroux was also telephoned on the following dates and apprised of the situation: January 8, January 13, January 15, and January 19. Mrs. Fourroux also testified that she called the plaintiff once during this period to request that Greenburg return the puppy. Admittedly, however, she at no time offered to return plaintiff's money.
During the month of January, Doctor Foote continued to treat the puppy doing all that he could for the animal. Once it became apparent that the puppy's condition had worsened and that it was unlikely that it would improve, Doctor Foote recommended that the dog be sent to the Auburn Small Animal Clinic in Auburn, Alabama, for a diagnostic evaluation. Thereafter on February 5 plaintiff again telephoned Mrs. Fourroux telling her of the poor state of health of the animal and its unresponsiveness to all medical treatments. The defendant, Mrs. Fourroux, in turn told Greenburg she would talk to her veterinarian and get in touch with the plaintiff the next day. Instead, she wrote a personal letter to the plaintiff, sending same by registered mail. On February 7 plaintiff received the letter notifying him that Mrs. Fourroux would not take the puppy back and refund plaintiff's money since it had been five weeks from the date of purchase. She however stated that she would take and care for the puppy for two or three weeks to evaluate whether the dog should be "put to sleep" but that she would not be responsible in the event of the dog's death. Plaintiff sent a responsive registered letter to Mrs. Fourroux the next day demanding his purchase price and veterinarian expenses incurred or alternatively threatened to file a redhibitory action.
Plaintiff subsequently filed suit on February 22, 1973. Defendants thereafter filed a motion for a judgment on the pleadings and alternatively filed an exception of no cause of action.
In February, 1973, plaintiff was unable for economic reasons to bring the puppy to the Auburn Small Animal Clinic but in late April he and his wife drove to Auburn and brought the puppy for diagnostic analysis. Subsequent tests revealed a severe neuromuscular disorder and it was agreed that the puppy would be released to the clinic for further testimony and research. If ultimately nothing could be done for the animal it was also understood that the puppy would be "put to sleep". Subsequently, after extensive tests and treatments were attempted the head veterinarian-neurosurgeon, Dr. B. F. Hoerlein, and his associates, determined on June 12 that the procedures employed were unsuccessful in correcting the dog's condition and the puppy was "put to sleep" on that date.
Shortly after the dog's demise plaintiff received a request on June 19th from Mrs. Fourroux, through her attorney, for examination of the dog by a veterinarian of her choice. On June 20th plaintiff advised the defendant that the animal was "put to sleep" and cremated on June 12.
Trial on the merits was subsequently held on September 6, 1973, and judgment was rendered in favor of the plaintiff granting a recision of the sale and ordering the defendants to repay to plaintiff the contract price ($200.00) of the dog and $35.00, representing approximately one-half of the veterinarian bills through February *644 6th. All other demands were rejected. Costs were subsequently assessed in equal portions to both plaintiff and defendants.
Plaintiff has appealed asking for additional "preservation" expenses and for expenses "occasioned by the sale" under Louisiana Civil Code Art. 2531. In addition plaintiff seeks damages for mental anguish and reasonable attorney's fees. He further cites as error the division by the trial judge of costs between the parties.
Defendants have appealed alleging error on the part of the district judge in not granting their motion for a judgment on the pleadings and not sustaining their exception of no cause of action. They further allege error in the trial court allowing evidence beyond the scope of plaintiff's pleadings.
We turn first to the defendants' specifications of error. Essentially their argument, insofar as the motion and exception are concerned, is based on the fact that the puppy was not suffering from any terminal condition and was capable of being returned to Mrs. Fourroux, yet the plaintiff took it upon himself (while the suit was pending and without informing the defendants or their attorney) to have the animal put to death and its remains cremated. As a result it is argued that the jurisprudence, requiring a tender of the item in dispute before redhibition can be claimed, is applicable and that the disposal of the dog herein rendered the plaintiff's claim moot.
However, we find no merit in defendants' contention that there was no tender of the puppy. Implicit in plaintiff's aforementioned registered letter, dated February 7, 1973, to the defendants for return of the purchase price was a tender of the dog. Plaintiff stated therein:
"Either take the puppy back and return my $200 purchase price and the sum owing Dr. Foote (in which case I will take no further action) or I will file a redhibitory action against you."
There is no question but that defendants refused the tender of the animal and to return the purchase price. Thereafter, upon the advice of recognized experts in the veterinarian field the dog was "put to sleep".
Tender has been held not necessary once refusal by the defendant is made. Frank Brigtsen, Inc. v. Swegel, 258 So.2d 579 (La.App. 4th Cir. 1972).
In addition when the thing purchased has "... perished through the badness of ... quality, ..." [LSA-C.C. Arts. 2532, 2536] it is not necessary that tender be made. Molbert Brothers Poultry & Egg Co. v. Montgomery, 261 So.2d 311 (La.App. 3rd Cir. 1972).
The rationale of the foregoing cases is in our opinion applicable herein. Under the particular facts and circumstances we feel that a re-tender was unnecessary as a condition precedent to the action in redhibition.
Defendants further allege that plaintiff was allowed to enlarge his pleadings inasmuch as he only claimed in his initial petition that the animal was "useless as a pet" because of ringworms and anemia. It is argued that ringworms are not fatal and that the cause of the animal's demise was a neuromuscular disorder (not mentioned in the pleadings) rather than anemia. As a result it is alleged that Doctor Hoerlein's testimony should not have been considered because such testimony reveals inquiry into matters not alleged in the pleadings.
Plaintiff did not allege that the animal had a neuromuscular disorder. However he did allege that a redhibitory vice was present in the animal. Such is to be presumed if the condition presents itself as herein within three days of purchase. Louisiana Civil Code Art. 2530. Plaintiff was not even aware of the exact cause of his puppy's condition when suit was filed. But plaintiff was well aware that from the *645 very first day he brought the dog home that it was very sick and could not function properly. The treating veterinarian was not even sure of the cause of the dog's condition but was sure that the dog at least had ringworms and anemia. Actually the neuromuscular disorder was not found by the veterinarians at the Auburn Animal Hospital until April, 1973, well over three months after the animal was purchased by the plaintiff.
In our opinion plaintiff in his petition alleging a redhibitory vice clearly stated a cause of action. The evidence presented was relevant to the issue pleaded, i. e. redhibition. Such proof did not enlarge upon the pleadings but merely showed more specifically that which had been pleaded in a general way. Under these circumstances we feel the plaintiff need not have described with exact particularity the defect causing the veterinarians at the Auburn Animal Clinic Hospital to decide the dog should be "put to sleep". See Goff v. Dewey Olivier, Inc., 137 So.2d 393 (La. App. 3rd Cir. 1962). We therefore opine the proof presented was in conformity with the allegations of plaintiff's petition and not an enlargement thereof.
Insofar as plaintiff's allegations are concerned, we turn first to Greenburg's argument that he should have been granted an amount for expenses "occasioned by the sale" under Civil Code Art. 2531. These alleged expenses ($22.48) represented transportation costs from Baton Rouge to and from Milton, Louisiana, in addition to telephone calls in connection with the proposed sale. Inasmuch as we have concluded plaintiff, as purchaser, was entitled to have the sale of the puppy rescinded, it is also appropriate that he recover necessary "expenses of the sale" which were incurred. Civil Code Art. 2531. In this respect we find in the record charges for telephone calls by the plaintiff from Baton Rouge to Youngsville (Milton) on December 16 ($.88). Accordingly, plaintiff should have been awarded this sum. In addition there is no dispute that plaintiff made the trip from Baton Rouge to Milton on January 3 to pick up the puppy. In answers to written interrogatories the plaintiff sets out the sum of $21.60 for said expenses, at the rate of 9¢ per mile. This sum, however, apparently includes the December 16th visit to Milton which the record bears out to be only a "detour" from actually a "job inquiry" trip to Lake Charles. We take judicial notice that a round trip from Baton Rouge to Milton would entail one driving approximately 120 miles. See Ogden v. Ogden, 220 So.2d 241 (La.App. 1st Cir. 1969). Accordingly, we opine one-half the $21.60 amount set out, or $10.80, should have been awarded the plaintiff.
Plaintiff's second argument is that he should be awarded "expenses of preservation" under Civil Code Article 2531 which includes all veterinarian fees, boarding fees at his home, phone calls, and expenses of transportation to and from Auburn Small Animal Clinic. Evidence introduced included veterinarian bills from Dr. Randy Foote totalling $76.75. The trial judge awarded plaintiff the sum of $35.00, representing approximately one-half of these veterinarian fees as of February 6 when defendants demanded return of the dog. The District Judge ruled that before that date defendants inferred consent to treatment. Our courts have recognized the validity of veterinarian bills for expenses as were made necessary by an attempt at preservation of an animal. See Lyle v. W. H. Hodges & Co., 82 So.2d 457 (La.App. Orl. Cir. 1955). We find no jurisprudence however which indicates that "expenses of preservation" can only be expended after consent by the seller. It is up to the court to determine if such expenses were "expenses of preservation", reasonably incurred. We think they were herein, insofar as Doctor Foote is concerned. Therefore the District Judge should have awarded plaintiff the full sum of Doctor Foote's veterinarian bills presented, i. e. $76.75.
We are also of the opinion that the $93.00 bill from Auburn Small Animal Clinic *646 should have been included as "expenses of preservation". As to the reasonableness thereof, plaintiff relied upon the advice of a competent veterinarian who opined he could do nothing further for the animal and that the specialists at the Auburn Hospital would be better equipped to treat and diagnose the dog's problems.
Plaintiff also claims travelling costs incurred as a result of transporting the animal to the Auburn Clinic. No one disputes the fact that Greenburg and his wife did drive to Auburn, Alabama, to have the dog examined and treated. He claims an amount of $60.48 for transportation costs. After taking judicial notice of the fact that such a trip would cover approximately 850 miles, in addition to recognizing the costs of driving and maintaining a vehicle today, we consider the amount of $60.48, to be an appropriate award. Connected therewith are also telephone bills evidenced in the record to the Auburn Animal Hospital. These total $12.20. Under the circumstances we feel such an amount should also be awarded as expenses connected with preservation of the animal.
Also included as "expenses of preservation" should be those telephone calls made by the plaintiff to Mrs. Fourroux on numerous occasions after the sale in January and February, 1973. The record reveals charges in the amount of $14.02 for said calls and such is to be further awarded the plaintiff.
Plaintiff asks finally that he be granted under "costs of preservation" the sum of $2.50 a day for the 118 days that he housed and fed the animal. The sum of $2.50 per day, however, is the average boarding rate that is charged in Baton Rouge by local veterinarians and not costs incurred by the plaintiff. We fully realize that proof of such an item is difficult but the record is void of evidence in respect thereto except for testimony by the plaintiff in answer to interrogatories wherein was clearly listed the costs, $38.62, to that date (March 9, 1973). Such being the case we feel that an award of $38.62 in this respect is justified.
Plaintiff also argues that attorney's fees should be granted as damages as well as an amount for mental anguish.
Civil Code Article 2531 fixes the liability of a seller in good faith and no other additional relief can be granted thereunder. Savoie v. Snell, 213 La. 823, 35 So.2d 745 (1948). Attorney expenses incurred in order to bring the action are not included. Scully v. Campo, 270 So.2d 267 (La.App. 4th Cir. 1972). As the trial judge pointed out, defendant vendors were not shown to have knowledge of the vice in the puppy prior to the sale. He therefore found Civil Code Article 2545 inapplicable and we concur in this holding.
Insofar as damages are allegedly due for mental distress, we note that this is a suit in redhibition or contract and not a suit in tort. Damages for mental distress are clearly not due under contract unless the contract has for its object gratification of some intellectual enjoyment. This case does not come within that exception. See Tauzin v. Sam Broussard Plymouth, Inc., 283 So.2d 266 (La.App. 3rd Cir. 1973); Moreau v. Marler Ford Co., Inc., 282 So.2d 852 (La.App. 3rd Cir. 1973). Plaintiff argues that mental distress damages are due by reason of this court's recent holding in Lincecum v. Smith, 287 So.2d 625 (La.App. 3rd Cir. 1973), wherein such was awarded the plaintiff because of the death of her dog. As pointed out therein, however, this was a tort suit under Civil Code Article 2315 for the wrongful conversion of the plaintiff's dog and not a suit in contract.
Plaintiff's final argument is that the trial judge erred in assessing costs equally between the parties. We think this argument has merit.
LSA-C.C.P. Art. 1920 states:
"Unless the judgment provides otherwise, costs shall be paid by the party *647 cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
As pointed out in Johnson v. Marshall, 202 So.2d 465 (La.App. 1st Cir. 1967), writ refused 251 La. 217, 203 So.2d 555 (1967) this article does not mean that there are no guidelines to govern the taxing of costs. "In the absence of some reason in equity or otherwise to control, costs generally follow the final judgment in favor of the prevailing party.'" In Johnson the trial court rendered judgment rejecting plaintiff's demands yet cast the defendants for all court costs. The defendants in the tort suit however were not found to be negligent in any way, nor was there any showing that the trial was prolonged or the costs increased by any action of the defendants. As a result the appellate court reversed the trial court and assessed all costs against the losing party (the plaintiff) therein.
This litigation was brought about by the redhibitory defects in the dog herein, for which defendants are responsible. The record transcription, depositions, expert witness fees, etc. are the result of this redhibition suit and defendants should be charged with the cost of this litigation. Nothing in equity or otherwise has been shown to alter this conclusion. Therefore it is our opinion that the trial court erred in casting the plaintiff with one-half the costs.
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as the plaintiff was granted the $200.00 selling price of the dog and insofar as that judgment dismissed plaintiff's claims for attorney's fees, and damages for mental anguish. The judgment awarding expenses of preservation is amended and it is hereby ordered, adjudged, and decreed that there be judgment in this respect in favor of the plaintiff in the sum of $295.07 [telephone bills for calls from Baton Rouge to Youngsville (Milton)$14.02, food costs for the puppy$38.62; Doctor Foote's fee$76.75; Auburn Small Animal Clinic bill$93.00; costs of transportation to and from Auburn$60.48; telephone bills for calls from Baton Rouge, La., to Auburn, Alabama$12.20]. The judgment is reversed insofar as plaintiff was not granted expenses "occasioned by the sale" and it is hereby ordered, adjudged, and decreed that there be judgment in this respect in his favor in the amount of $11.68 [telephone bills for calls from Baton Rouge to Youngsville (Milton)$.88; costs of transportation to and from Baton Rouge, La., to Milton, La.$10.80]. Legal interest is to accrue from the date of judicial demand on all amounts awarded plaintiff herein. The judgment assessing one-half of the costs to the plaintiff is also reversed and set aside and all costs, both at trial and on appeal, are hereby assessed to the defendants.
Affirmed in part, amended in part, reversed in part, and rendered.