368 So.2d 742 (1979)
Richard D. LAUGHLIN, Plaintiff-Appellee,
v.
FIAT DISTRIBUTORS, INC., et al., Defendants-Appellants.
No. 6785.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
Rehearing Denied March 29, 1979.
*743 Scofield, Bergstedt & Gerard, Robert L. Hackett, Lake Charles, for defendants-appellants.
Jones, Patin, Harper, Tete & Hanchey by Gregory Massey, Fred A. Book, Jr., Lake Charles, for plaintiff-appellee.
Hunt, Godwin, Painter & Roddy by Thomas L. Lorenzi, Lake Charles, for defendant-appellee.
Before CULPEPPER, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
This case comes before us on appeal from a judgment awarding Richard Laughlin, plaintiff in a redhibitory action, the sum of $8,552.00. Plaintiff's suit stems from the sale to him of a 1975 Fiat automobile. The automobile was purchased on or about November 5, 1975 for the price of $4944.31. Plaintiff brought suit on January 27, 1977 against the seller, Christman Motor Car Co., Inc. (Christman) and the manufacturer, Fiat Distributors, Inc. (Fiat), alleging a multiplicity of defects, including (but not limited to) squealing brakes, excessive oil consumption, defects in the electrical system, intermittently inoperable brake and signal lights, and yet undiagnosed defects which have rendered the automobile totally inoperable since February, 1977. Christman thereafter made third party demands against Fiat and Gulf Datsun Fiat, Inc. (Gulf)[1] seeking judgment against said third party defendants for any amounts *744 which it might be found liable to plaintiff. The matter was tried before a jury, with the verdict being rendered in favor of plaintiff on the following special interrogatories:

 "1. Were there redhibitory defects in the
 Fiat automobile at the time of the sale?
 yes
 2. (b) Is Mr. Laughlin entitled to a reduction
 of the price?
 yes
 (1) By what amount do you determine
 the purchase price should be reduced?
 $3,000.00
 3. What amounts of recovery, if any, do
 you find for plaintiff for the following items?
 (a) expense of sale $3,000.00[2](b) plaintiff's
 attorney's fees $3,000.00
 (c) mental anguish
 and inconvenience $1,500.00
 (d) other damages $52.00
 4. Did Christman Motor Car Co., Inc. know,
or should it have known of the defects at the
time of the sale?
 no
 5. What amount, if any, is to be credited to
Christman Motor Car Co., Inc. for plaintiff's
use of the car after the defects were discovered?
 none
 6. What amount of recovery of attorney's
fees do you award for Christman Motor Car
Co., Inc's attorney?
 $1,000.00

The trial court rendered and signed a judgment pursuant to the jury's verdict as amended pursuant to plaintiff's assent that the amount awarded for expenses of sale be reduced. Fiat appealed. Christman and Laughlin have answered this appeal, seeking an increase in attorney's fees for services rendered by counsel on appeal. On appeal Fiat makes the following assignments of error:
1. The verdict in favor of plaintiff was erroneous, as plaintiff refused to allow Fiat to repair the automobile;
2. The verdict was excessive as the award exceeded the purchase price of the car and included an improper award for mental anguish;
3. If the verdict is affirmed, Christman should be cast in judgment with Fiat for plaintiff's attorney's fees, and Fiat should not be cast in judgment for Christman's attorney's fees.
I. WAS THE VERDICT IN FAVOR OF PLAINTIFF ERRONEOUS DUE TO PLAINTIFF'S REFUSAL TO ALLOW FIAT TO REPAIR THE AUTOMOBILE?
LSA-C.C. Article 2531 provides:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.

In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
*745 Pursuant to this article, the good faith seller is given the right to demand tender of the defective product for repair as a necessary prerequisite to the institution of an action in redhibition. Fiat contends that under the facts of this case, it should have been afforded the same right to demand tender of the automobile for repair prior to suit.
Appellant urges that on January 21, 1977 Mr. Joseph Stafford, a regional technician for Fiat, contacted Mrs. Laughlin and offered to make repairs on the automobile. On January 25, 1977, however, Mrs. Laughlin refused to allow the Fiat representative to attempt repairs on the car. Instead, she asked for a refund of the purchase price of the car, which request was refused by Stafford. Therefore, it is urged, Fiat was refused tender of the automobile, and should not now be cast in damages in this redhibitory action. We disagree.
In Burns v. Lamar-Lane Chevrolet, Inc., 354 So.2d 620 (La.App. 1st Cir. 1977), the court stated:
"Art. 2531 requires `(t)he seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices.' This article has no application to manufacturers. They are presumed to know the defects of their products. Radalec, Inc. v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955). Therefore a manufacturer could never be a `seller who knew not the vice of the thing.' Therefore whether or not there was any tender or opportunity to repair is irrelevant as to GM. Prince v. Paretti Pontiac Co., 281 So.2d 112 (La.1973) held that tender is unnecessary as a prerequisite to a redhibitory action. We find that Prince is still the law as to sellers with knowledge of the vices." (Footnotes omitted) at pp. 622-623.

We agree with this conclusion, and find that the purchaser of a defective product need not tender that product to the manufacturer for repair prior to the institution of an action in redhibition.
Appellant urges that at the time the aforementioned attempt to repair the automobile was made, there was no longer a Fiat dealership in the Lake Charles area, and that consequently it should be treated as a seller in this case. The unavailability of a seller in a given area does not thereby transform the manufacturer into a seller in that area.
Although we find that Fiat did not have a right to demand tender of the automobile for repair prior to institution of suit, we do find ample evidence in the record to indicate that during 1976, prior to the date on which Mr. Stafford requested an opportunity to repair the automobile, Fiat had in fact been given several opportunities to repair various defects in the car, and did make some repairs, but that it was unable to maintain the car in an operable condition. We find no merit in this assignment of error.
II. WAS THE JURY'S AWARD EXCESSIVE?
The trial court awarded plaintiff the sum of $1,500.00 for "mental anguish and inconvenience", which damages appellant urges are not recoverable in a redhibitory action. As this is essentially the only portion of the award with which appellant is in serious dispute, and as we find ample evidence in the record to support the remainder of the jury's award, we herein confine our review to the propriety of the $1,500.00 award for mental anguish and inconvenience. In so reviewing this award, we find the trial court erred in granting plaintiff such recovery.
LSA-C.C. Article 2545 provides:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."
As manufacturer of the automobile, Fiat is presumed to have known of its defects, and was consequently answerable to plaintiff for damages arising therefrom. However, in a redhibitory action, the plaintiff seeks to avoid a sale due to some vice or defect in *746 the thing sold, based upon an alleged breach of the implied warranty of fitness which is associated with all sales. LSA-C.C. Article 2520; Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 So.2d 377 (La.1972). A sale is a special form of contract expressly defined by law and concerning which rights and obligations of buyer and seller are specifically prescribed by law. LSA-C.C. Articles 2439, 2456, 2475, 2510, 2520, 2531, 2545, 2547; Stratton-Baldwin Co., Inc. v. Brown, 343 So.2d 292 (La.App. 1st Cir. 1977). LSA-C.C. Article 1934, which prescribes the general rules governing recovery in contract, is therefore applicable in a redhibitory action to delineate the extent of damages awardable to a successful plaintiff. Damages of a non-pecuniary nature are provided for in subsection 3 of this article, which states:
"Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religion or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule."
In Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976), our Supreme Court analyzed the origin of this section, and interpreted it as follows:
"Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable.

On the other hand, where a principal or exclusive object of a contract is intellectual enjoyment, nonpecuniary damages resulting from the nonfulfillment of that intellectual object are recoverable. Damages in this event are recoverable for the loss of such intellectual enjoyment as well as for mental distress, aggravation, and inconvenience resulting from such loss, or denial of intellectual enjoyment." at p. 437.
In Meador, the object of the contract in dispute was the repair of an automobile, which the Court concluded did not fall within the purview of "intellectual enjoyment" contemplated by this section of Article 1934. We find that a contract of sale of an automobile likewise does not have as its principal object "intellectual enjoyment" such as would enable the plaintiff to recover nonpecuniary damages.
In Moreau v. Marler Ford Co., 282 So.2d 852 (La.App. 3rd Cir. 1973), a plaintiff seeking specific performance of a contract to sell a truck was denied damages for inconvenience, humiliation and anxiety arising from plaintiff's inability to use the truck, and in DiGiovanni v. April, 261 So.2d 360 (La.App. 1st Cir. 1972), an automobile owner who was unable to show pecuniary loss associated with the inconvenience of not having access to his automobile (arising from a contract to have the automobile's engine replaced) was likewise precluded from such recovery. In Tauzin v. Sam Broussard Plymouth, Inc., 283 So.2d 266 (La.App. 3rd Cir. 1973), a redhibitory action brought against a bad faith seller to rescind the sale of a defective automobile, the plaintiff was again refused damages for mental anguish and embarrassment. See also: Sunseri v. Westbank Motors, Inc., 228 La. 370, 82 So.2d 43 (1955); Aiken v. Moran Motor Co., 165 So.2d 662 (La.App. 1st Cir. 1964); and, Burns v. Lamar-Lane Chevrolet Inc., supra.
We conclude, therefore, that the law in Louisiana does not permit a plaintiff, who brings a redhibitory action for damages arising from the sale of a defective automobile to recover nonpecuniary damages, i. e., damages for mental anguish. Consequently we disallow that portion of the trial court's award which represents compensation for mental anguish and inconvenience in the sum of $1500.00.
*747 III. DID THE TRIAL COURT ERR IN ASSESSING ATTORNEY'S FEES ON BEHALF OF PLAINTIFF AND CHRISTMAN AGAINST FIAT?
The trial court awarded $3,000.00 for attorney's fees for plaintiff, and $1,000.00 for attorney's fees for Christman, to be paid by Fiat. Appellant urges however, that Christman contributed to the malfunction of the automobile, and should therefore have been held solidarily liable with Fiat for the plaintiff's attorney's fees, and precluded from recovering its own attorney's fees. Specifically, Fiat alleges that Christman failed to make a predelivery inspection of the automobile and improperly installed the radio, thereby causing it to give off static. Although the record is replete with speculation as to how each of the defects complained of could have originated, we do not find that Fiat has borne its burden of proving that Christman's actions actually contributed to the defective condition of the automobile.
Fiat contends that its regional technician, Joseph Stafford, placed the "probable" cause of the radio static on improper installation by Christman. However, our examination of Mr. Stafford's testimony reveals that he also stated that the problem could have been traced to the automobile's spark plug wiring. Speculating that there could have been copper cored wires in Mr. Laughlin's automobile, Mr. Stafford testified as follows:
"Q. So if you had copper in the automobile, there's a good possibility that it would pick up radio static?
A. Without the proper resistors and parts put on the car, yes, sir." (338)
Further testimony adduced at trial indicates that the intermittent failure of the brake and signal lights could have been caused by improperly installing a trailer hitch on the automobile. Christman had installed a trailer hitch on Mr. Laughlin's car, but there is no evidence to support the conclusion that it did so improperly. Likewise, there is speculation in the record that the broken seat latch, which caused the driver's seat to collapse while Mr. Laughlin was driving the car, could have resulted when an upholstering firm replaced the defective seat covers which had been provided by Fiat. Again, however, there is no evidence to establish that it was when the new seat covers were installed that the latch was broken. Mr. Stafford testified that he never actually examined Mr. Laughlin's automobile, and could not therefore diagnose its defects through personal inspection.
We find that the record supports the trial court's award of attorney's fees for the plaintiff and Christman, and find no merit to this assignment of error. Although appellees have answered this appeal seeking an increase in their awards for attorney's fees for services rendered on appeal, we find the trial court's awards sufficient to reimburse counsel for both parties for services rendered both at the trial and appellate levels.
For the above and foregoing reasons we will amend the trial court judgment so as to reduce the award to Richard Laughlin from $8,552.00 to $7,052.00. In all other respects the judgment appealed from is affirmed. Costs of this appeal are to be paid by appellant.
AMENDED AND AFFIRMED.
NOTES
[1] Christman went out of business in February of 1976. Sometime thereafter, Gulf began servicing Fiat automobiles, and plaintiff had occasion to bring his car to Gulf for service. The trial court's minutes reflect that a directed verdict was rendered in favor of Gulf, who was dismissed from suit. The record does not contain a final judgment dismissing Christman's third party demand against Gulf and the correctness of the trial court's ruling in this regard is not before us on appeal.
[2] The plaintiff voluntarily agreed to reduce that portion of the award representing expenses of the sale to $1,000.00.