CHEHARDY, Judge.
Plaintiff, Michael J. Killeen, Jr., and defendant, Eugene M. Ducote, doing business as Gene Ducote Volkswagen-Fiat, both appeal a district court decision in favor of the plaintiff and against the defendant in the sum of $1,800 plus interest from the date of judicial demand and all costs of the proceedings.[1] The judgment was later amended in favor of the plaintiff and against the defendant also awarding the plaintiff attorney fees in the amount of $1,000 in addition to the initial sum awarded.
In his reasons for judgment, the trial court judge stated:
“The plaintiff, Michael J. Killeen, Jr., filed this suit against Eugene M. Dueote, doing business as Gene Ducote Volkswagen-Fiat and Fiat Distributing Company, on January 10, 1977. He alleged that he purchased from the defendant a 1976 Fiat which he later discovered had been damaged and then sold to plaintiff as a new car. Plaintiff thereupon spoke with the defendant, who admitted that the car had been previously damaged but refused to return to Mr. Killeen his purchase price. After making repeated requests of Ducote, the plaintiff filed suit.
*1283 “The evidence at trial established conclusively that the plaintiff’s auto had been damaged before the sale, yet the plaintiff was not informed of this condition by the seller. The plaintiff has testified that, had he known of this defect, he would not have bought the car.
“In Tauzin v. Broussard Plymouth, Inc. 283 So.2d 266 (3rd Cir. [La.App.] 1973), the court held that an automobile dealer who represented to a buyer that an automobile was new when in fact it had been damaged in a collision was guilty of fraud according to La.C.C. Art. 2547.
“The facts in the instant case are quite similar to those of Tauzin. Therefore, this court holds that the failure of the defendant to disclose this material fact that the car had been involved in a prior accident does constitute fraud.
“The damage done to the auto was not such as to render the auto totally unusea-ble or unsuited for its purpose. Therefore, a reduction in price is proper. Tauzin v. Broussard Plymouth, Inc., supra, Aiken v. Moran Motor Co., 165 So.2d 662 (1st Cir. [La.App.] 1964). Therefore, the court will award judgment for plaintiff and against the defendant in the amount of ONE THOUSAND EIGHT HUNDRED AND 00/100 ($1,800.00) DOLLARS plus interest and costs.”
At the trial on the merits of the case the plaintiff testified that in June of 1976 he purchased what he thought was a new Fiat automobile from Ducote’s business establishment for $5,012.79. He explained that financing was arranged in the form of a personal loan through the Bank of New Orleans, which was secured by a chattel mortgage on the car.
Killeen stated he returned the car for repair of a leak on the inside caused by the air-conditioning or the cooling system, to remedy dents in the hood, and for front bumper problems. He further testified in the latter part of August or early September of 1976 he had an accident with the car in Mississippi on a rainy night when the car spun in a turn and flipped into a ditch. He said the local repair shop in Mississippi took one month to repair the car, due to the difficulty of getting parts. When he went to retrieve the automobile from the repair man, he was told that extensive “bondo” had been found throughout the rear end, a cross member section behind the grill was bent and rusted, and numerous screws were missing from the grill front, leading to the conclusion that the vehicle must have been involved in some accident prior to the immediate one.
Upon his return to New Orleans, after failing to reach what he considered an acceptable settlement between himself and Ducote, the plaintiff delivered the car to the defendant along with its keys and filed an action in redhibition.
Ducote testified he personally learned of the pre-sale damage done to the Fiat only when the plaintiff came to complain of the evidence found during repair of damages from the second wreck. He then discovered from a check of the records on the vehicle and a discussion with the establishment’s service manager that the first accident occurred when a porter on the lot was driving another vehicle and hit the car in question, driving it into a car wash rack area and damaging the front grill. Ducote also admitted that, according to his records, after the sale of the ear he had repaired a leaking air-conditioner and a fluctuating tachometer, had aligned the front end and balanced the front wheels, and he had one work order concerning the car jerking at high and low speeds. He also had resecured the front bumper guard. Apparently the car was brought in by the plaintiff on at least one other occasion, again for repair of the air-conditioner leak and because the tachometer was sticking. Plaintiff admitted these problems were ultimately remedied by the dealership and stated the mileage on the car was 3,241 when it was returned to Ducote.
David Ray, who repaired the subject vehicle after the plaintiff’s accident in Mississippi, was accepted by the court as an expert in the body and fender automobile business. He said he discovered prior damage from the first accident under the hood *1284 and behind the grill, which damage affected a portion of the main structural part of the car, the radiator support. He said the evidence he found was an extensive amount of body filler on the left side and he could also see scratches which appeared to be body filler. His conclusion was that an integral part of the support system of the car had been damaged in the first accident. Ray also stated the total cost of repair for damages from the second accident was $1,481.31.
Richard Berger, service manager of the defendant’s business establishment, was accepted by the court as an expert in managing a body and automotive shop. He confirmed Ducote’s description of the first accident, which took place on the car lot, adding that he had had the grill, front bumper and light assembly, and the rear fenders repaired. He described the damage as “minimal” and said the total amount of repair required cost the company $292.52. He said that at the time he inspected the vehicle he saw no damage to the front radiator support such as was allegedly later discovered by Ray. He said, however, that the front radiator support could be damaged in an accident such as the second one in which the vehicle was involved.
The present case is very similar, as noted by the trial court judge, to the factual situation and issues presented in the case of Tauzin v. Sam Broussard Plymouth, Inc., 283 So.2d 266 (La.App.3d Cir. 1973). In that case the plaintiff discovered, subsequent to the purchase of his car, that the vehicle had been involved in a collision prior to the sale and had sustained $413 in damages. The court held that LSA-C.C. art. 2520 was authority for rescission where the vices and defects complained of are of such a nature as to render the thing sold either totally useless to the buyer or its use so inconvenient that it is to be assumed the buyer would not have purchased it had he known of such defects. However, the appellate court agreed with the trial court that the defects complained of in that case (loose battery or starter cable, loose speedometer cable, malfunctioning temperature gauge, and loose or missing screws, among others) were adjustments ordinarily associated with the purchase of a new car, or “minor” in nature and did not justify rescission. The appellate court did note, however, that LSA-C.C. art. 2547 specifically authorizes the trial court judges to grant a reduction in price in an action of redhibition and it held there was sufficient evidence in the record to justify a reduction in the price in the amount of $600.
Although this court agrees with the results of Tauzin v. Sam Broussard Plymouth, Inc., supra, we prefer the rationale expressed in Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir. 1975), wherein the court agreed with the trial court that the buyer did not meet the burden of proving a redhibitory defect under LSA-C.C. art. 2520, but then stated at 802-803:
“In every redhibitory action if the evidence establishes only a partial failure of consideration, a reduction in the purchase price may be granted to the buyer. See Ingersoll v. Star Chrysler, Inc., La.App., 234 So.2d 85 (4 Cir. 1970), writ refused 256 La. 365, 236 So.2d 499 (1970); Wolfe v. Henderson Ford, Inc., La.App., 277 So.2d 215 (3 Cir. 1973). See also LSA-C.C. Arts. 2541, 2543.
“In the Star Chrysler case, the Court said:
‘In every redhibitory action if the evidence establishes only a partial failure of consideration the court has the power and duty to decree a quanti minoris, or a reduction of the purchase price.’
“The Court, in Henderson Ford, ruled:
‘A decree of quanti minoris is responsive to an action for redhibition, being expressly authorized by LSA-C.C. Art. 2543. It follows that in every redhibi-tory action, the judge has the power and the duty, if he believes that the evidence establishes only a partial failure of consideration, to decree a quanti minoris.’
“In such a case, the amount of the reduction in price should be the difference between the actual purchase price and the *1285 price a reasonable buyer and seller would have agreed upon if they had both known of the defect. See Menville v. Stephens Chevrolet, Inc., supra; Tauzin v. Sam Broussard Plymouth, Inc., supra; Gauche v. Ford Motor Company, La.App., 226 So.2d 198 (4 Cir. 1969).
“In Stephens Chevrolet, in determining the amount of reduction to which the buyer was entitled, the Court said:
‘The diminution which the trial judge may decree under C.C. art. 2543 is theoretically the difference between the sale price and the price the reasonable buyer and seller would have agreed upon if they had known of the defects. ‘To prove the theoretical price to which the actual sale price should be reduced, a plaintiff attempts to establish the fair value as of the time of the sale, if the defects had been known. Evidence as to this theoretical value may consist of expert opinion testimony, of costs expended to place the thing in sound condition, or of other facts bearing on the reduced price a forewarned buyer would have paid and a seller with knowledge of the defects would have accepted. But in the final analysis the trier of fact cannot mathematically calculate what price the parties would have agreed to, if they had known of the defects; the trier must consider the overall evidence and, using limited discretion, must set a reduced sale price which fictionally represents the fair value at the time of sale.’ ”
In the present case, similarly, we do not find that the car was malfunctioning to any great extent during the period the plaintiff actually used the vehicle, up to the time of the second accident. However, because it was uncontroverted that some damage to the car was sustained as a result of the first accident and certainly due to the fact the plaintiff assumed he was buying a car which had not sustained any previous damage, although repaired, there was a partial failure in consideration. The trial court judge, therefore, was correct in awarding a reduction of price in the amount of $1,800, an amount clearly within the discretion afforded him in setting damages.
In regard to the issue of attorney fees, LSA-C.C. art. 2545 states the seller who knows the vice of the thing he sells and omits to declare it is also answerable to the buyer in damages and for reasonable attorney fees. In addressing itself to this question the court in Wade v. McInnis-Peterson Chevrolet, Inc., supra, stated at 803:
“To recover attorney’s fees the buyer must prove knowledge of the defect by the seller. He need not prove wilful misrepresentation. It is sufficient for the buyer to prove actual or constructive knowledge by the seller. Thus, if the seller knew or should have known of the defect and failed to declare it to the buyer, the seller is liable additionally for reasonable attorney’s fees. See Juneau v. Bob McKinnon Chevrolet Company, supra; Rey v. Cuccia, supra.”
Although the defendant Ducote insists, believably, that he had no actual knowledge of the damage and repair done to the subject vehicle prior to its sale to the plaintiff, because the car was both damaged and repaired by employees of the defendant, this court holds that he at least had constructive knowledge of what had happened to the vehicle while it was on the lot of his establishment, and, therefore, is answerable to the plaintiff for attorney fees. A review of the record satisfied this court, moreover, that the award of the trial court for $1,000 in this regard was reasonable compensation for the work done by plaintiff’s attorney in this case.
Additionally, this court grants the plaintiff $500 in attorney fees for prosecution of the case on appeal, thereby increasing those fees to a total amount of $1,500, under the authority of LSA-C.C. art. 2545 and Dunlap v. Chrysler Motors Corp., 299 So.2d 495 (La.App. 4th Cir. 1974).
Because the subject car was always completely useable, except during the period it was being repaired as a result of the second accident, the trial court properly denied the additional damages claimed by the plaintiff.
*1286 For the reasons assigned, therefore, the district court judgment is amended, increasing attorney fees awarded to the plaintiff to $1,500, and in all other respects the decision is affirmed.
AMENDED AND AFFIRMED.

. The judgment also decreed that the lawsuit filed against the defendant, Fiat Distributing Company, was dismissed.