STOKER, Judge.
This suit was originally brought as an injunction suit by an employee to prevent his employer from removing him from office as Executive Director of the Housing Authority of Opelousas, Louisiana. A temporary restraining order was issued followed by a hearing on a preliminary injunction which restrained the Authority from removing the plaintiff from his office. Thereafter, the plaintiff, Ashton Giron, decided to acquiesce and to give up his position as Executive Director for the Authority and to seek damages for breach of contract instead. As it stands this suit is for breach of contract of employment.
The principal issue in this appeal is whether plaintiff may elect to change the remedy sought from injunction to damages.
Ashton Giron, the plaintiff, was a maintenance employee of the defendant, The Housing Authority of Opelousas, Louisiana, on May 10,1976. On that day the Board of Commissioners of the Authority, by a three to one vote, resolved to engage plaintiff as Executive Director of the Authority effective July 1, 1976, for a period of five years. At a meeting held on March 21, 1977, the Board relieved Giron of his position and duties as Executive Director. At that time, the Board returned Giron to his former job as Maintenance Superintendent I for the Authority.
Giron filed suit against the Authority on March 23, 1977, seeking injunctive relief. On that day a temporary restraining order was signed restraining the Authority from relieving Giron of his post. A preliminary injunction hearing was held on April 7, 1977. The trial court granted the preliminary injunction on April 14, 1977, restraining, enjoining and prohibiting the Authority, the Board or its agents from relieving Giron of his post as Executive Director for the Authority. (Tr. 25) No appeal was taken from the granting of the preliminary injunction.
After obtaining the preliminary injunction, plaintiff decided to acquiesce in the Board of Commissioner’s action relieving him of his office as Executive Director. On June 30, 1977, Giron wrote to the Chairman of the Authority to this effect. In the letter Giron informed the Authority that he was returning to his maintenance job, which he did on July 1, 1977. He also informed the Authority that his attorneys had been instructed to amend his suit to seek damages, that is, to change the action from one for injunctive relief to one for damages for breach of contract. Giron noted among his reasons for taking this course the fact that the trial of the permanent injunction might not occur until several months in the future. On June 30, 1977, plaintiff did amend and supplement his petition to seek damages, and he eliminated his demand for injunctive relief. (Tr. 27)
Subsequent to the amendment of plaintiff’s petition to change the relief sought from injunction to damages, the defendant filed several defensive pleadings. On December 19, 1977, the Authority filed a peremptory exception, a motion to dismiss, and a dilatory exception of vagueness. The peremptory exception stated plaintiff had no right of action because he had resigned his position as Executive Director, and the amended and supplemental petition failed to state a cause of action against the defendant. (Tr. 42) The motion to dismiss plaintiff’s petition was grounded on the allegation that plaintiff voluntarily resigned his position and advised the defendant’s Board that he was returning to his maintenance job under Civil Service. (Tr. 43) On December 29, 1977, defendant filed a motion for summary judgment pitched on the same general grounds as those stated in the peremptory exceptions and the motion to dismiss. (Tr. 48) The trial court heard the motions and exceptions on January 20,1978, and denied them all, although the minute entry indicates the petition would be amended within ten days. A second amendment was filed on January 26, 1978. Defendant filed an answer on February 2, 1978.
Trial on the merits of this case took place on October 19 and 20, 1978, and reasons for judgment were assigned by the trial court on January 29, 1979. After a recitation of *1226 the facts, about which there seems to be no dispute, the trial court’s reasons for judgment reflect a decision in favor of plaintiff Giron. The trial court awarded plaintiff the difference between his salary as Executive Director of the Authority and his present salary as Maintenance Superintendent I. His salary as Executive Director was $18,000 with a car allowance of $80 per month. Giron returned to his maintenance job at $985 gross per month. (Tr. 629 and 631)
Pertinent portions of the trial court’s reasons for judgment rendered January 29, 1979, read as follows:
I have considered these facts as well as the evidence, the briefs, and the arguments of counsel, and I am of the opinion that Ashton Giron was hired by the Opel-ousas Housing Authority by virtue of an official act of authorization of that Authority, and that under Article 167 of the Louisiana Civil Code, his employment for a term of five years was proper.
Mr. Giron was not dismissed for unsatisfactory service nor for violation of any of the regulations of the Authority as provided for by Section 9-B of the personnel policy of the Housing Authority of the City of Opelousas; furthermore it does not appear that he was offered a hearing prior to his dismissal as executive director. Thus his dismissal constituted an active breach of contract by the Authority, entitling him to seek damages under Article 2749 of the Louisiana Civil Code or to seek injunctive relief.
The plaintiff’s choice to amend his original petition and to seek damages rather than continue the pursuit of injunctive relief did not constitute a resignation depriving him of the right to recover damages, since the judgment granting a preliminary injunction is an interlocutory judgment and cannot be said to have acquired the authority of a thing adjudged. See, Whalen v. Brinkmann [La. App.], 258 So.2d 145, at Page 146-147.
Mr. Giron is therefore entitled to damages which are fixed as the difference between his present salary as Maintenance Superintendent I and his former salary of $18,000 per year as executive director. Although the plaintiff has also asked for damages for mental pain, anguish, and suffering resulting from the wrongful actions of the defendant, no allowance can be made therefor, since an award for such damages can be granted only if the contract breach had for its object the gratification of some intellectual enjoyment, convenience, or other legal gratification as described in 1934(3) of the Louisiana Civil Code. (In this connection, see also, Uhlich v. Medallion Realty, Inc. [La.App.], 334 So.2d 788; Greenburg v. Fourroux [La.App.], 300 So.2d 641, writ denied [La.], 303 So.2d 181).
A judgment purporting to be in conformity with the reasons for judgment of January 29, 1979, was signed on May 9, 1979. The judgment grants plaintiff a monetary judgment for $18,720 together with interest at the rate of seven per cent per annum from date of judicial demand until paid and for costs. On February 2, 1979, (prior to the signing of the judgment) the defendant Authority filed one single pleading setting forth the peremptory exceptions of res judi-cata and “no right and no cause of action”. (Tr. 572) The two paragraphs of the exceptions read as follows:
1.
On the 14th day of April, 1977 in the above numbered cause, a preliminary injunction was granted on plaintiff’s behalf in conformity with his “Petition for Writ of Injunction”. The aforesaid action was between the same parties, in the same capacity, on the same cause of action, and had the same object as this action. Moreover, it constituted an election of remedies. Exceptor specially pleads the judgment rendered therein, from which no appeal was taken, as res judicata of this action.
2.
The plaintiff has no right and no cause of action for the reason that the cause of action which the plaintiff may have had *1227 for damages was merged in this Honorable Court’s Order or Judgment of April 14, 1977, and as such, the aforesaid Order of Judgment constitutes a bar to a cause of action for damages based upon the same cause, object, and parties and also thereby acts as a bar to any right of action which the plaintiff may have had.
The peremptory exceptions were overruled by the trial court on May 9, 1979, the same date on which the judgment on the merits was signed. Defendant then appealed suspensively to this court.
Insofar as this appeal is concerned no issue is made as to justification or lack of justification for relief of plaintiff from his office as Executive Director of the Authority-
The specifications of error and issues set forth in defendant-appellant’s brief are set forth in a footnote.[1]
I.
In its specification of error number one, the defendant challenges the authority of the chairman of the Board of Commissioners to enter into the five-year contract. The attack is centered on the correctness and validity of the minutes. At the Authority meeting of May 10, 1976, at which the hiring of plaintiff Giron was taken up, the commissioners present were Commissioners Lemon (chairman), Zerangue, Emon, Richards and Prados. Three votes were taken. The commissioners first voted by a three to two vote to appoint Ashton Giron Executive Director of the Authority effective July 1, 1976. Richards and Prados voted against the motion. The second development was a motion by Richards, seconded by Prados that Giron be given a one-year contract. The motion failed with Zerangue, Emon, and Lemon voting against the motion. By a third action, a three to one vote authorized a five-year contract at an annual salary of $18,000. The minutes show commissioner Richards voted in favor of this action. (Tr. 384)
At the trial on the merits, Mr. Richards’ was produced as a witness by the Authority. Through Richards’ testimony the Authority attempted to attack the authenticity of its own minutes. The court sustained plaintiff’s objection to this testimony. In an offer of proof, Richards testified he did not vote for the motion to hire plaintiff for five years. (Tr. Vol. 5, Reporter’s page 45)
*1228 A second attack made by the Authority on the third motion is that the minutes omit the words “on motion” and read:
After discussion by Commissioner Ze-rangue and seconded by Commissioner Emon that a five (5) year contract be given to Mr. Ashton Giron, effective July 1, 1976, with an annual salary of $18,-000.00. Subject to the personnel policy adopted by the Board, that the Chairman is authorized to execute this resolution. Said contract attached.
Yeas: Commissioner Zerangue, Commissioner Emon, Commissioner Richards.
Nays: Commissioner Prados.
A final challenge to the validity of the motion in question is the assertion that the minutes of May 10,1976, were not approved at the next regular meeting of the Board of Commissioners. If this alleged failure has any significance, it should be noted that the only proof of this fact lies in the testimony of Richards but that he also testified he was absent from that meeting. (Tr. Vol. 5, Reporter’s pages 48-50) The minutes in question were not produced.
We are of the opinion that specification of error number one is laid on grounds too tenuous and technical to have merit. The May 10, 1976, minutes were signed by the chairman and secretary. (P-3, Tr. 384) Mr. Richards, on cross examination in response to the testimony given under the offer of proof, admitted he never protested the fact that the minutes showed he voted for the five-year contract or asked for correction. (Tr. Vol. 5, Reporter’s page 48) The failure of the minutes to show that the Commissioner made a motion relative to the five-year contract is obviously a typographical omission. All other portions of the minutes follow a similar form but read “after discussion and on motion of_” As to the proposition in question, the minutes show it was seconded by Commissioner Emon and was voted on. Obviously, it was a motion. Moreover, on May 12, 1976, a written employment contract was signed with Giron by Earl Lemon as chairman of the Authority and on behalf of the Authority. (Tr. Vol. 2, pages 296-297) Mr. Lemon voted at the May 10, 1976, meeting only to break ties. Had Richards not voted in favor of the five-year contract, a two to two vote would have resulted. Lemon would have had to vote to break the tie. We are inclined to believe the minutes are correct, and if not, Lemon’s vote would have been in favor of the contract, inasmuch as he signed the actual employment contract two days later.
Plaintiff began his duties July 1, 1976, and apparently functioned under color of authority until March 21, 1977, when the Board action dismissed him. The fact that plaintiff served this long — nearly nine months — and the Board thought it necessary to take official action to relieve plaintiff of his office — lends support to the inference that the Board considered the hiring valid.
For the foregoing reasons we find no merit in appellant’s assignment of error number one.
II.
Appellant puts forward an “election of remedies” theory as its second assignment of error. It asserts that, because plaintiff initially sued for specific performance in the form of injunctive relief, he cannot later switch to a demand for damages in lieu of the first form of relief sought. This position appears to be well supported in law. It was held in Borie v. Smither, 8 So.2d 148, 154 (La.App.Orl.1942) writ denied July 20, 1942, that:
It is well recognized in our law that, once a party to a contract has elected a remedy, or right, or option, on which he will rely under his contract, he cannot thereafter shift to another remedy, right, or option which subsequent circumstances or events might make it more advantageous for him to adopt.
* # # * * *
Des Allemands Lumber Company v. Morgan City Timber Company, 117 La. 1, 41 So. 332; Bierce v. Hutchins, 205 U.S. 340, 27 S.Ct. 524, 51 L.Ed. 828; Sanitary *1229 Plumbing Company v. Carnahan, 6 La. App. 547; Columbia Weighing Machine Company v. Balter, 9 La.App. 326, 120 So. 397; Tremont Lumber Company v. Robinson Lumber Company, 160 La. 254, 107 So. 101.
The same rule has been followed in Garrett v. Girardian Insurance Co., 155 So.2d 284 (La.App. 2nd Cir. 1963) and Radiophone Service, Inc. v. Crowson Well Service, Inc., 309 So.2d 393 (La.App. 2nd Cir. 1975).
We believe the seeking and obtaining of injunctive relief had the effect of destroying any cause of action plaintiff may have had for damages for breach of his contract of employment. For this reason the judgment of the trial court must be reversed. While we are not certain that plaintiff’s letter of June 30, 1977, constituted a resignation of the executive directorship of the Authority, it specifically notified the Board that he no longer intended to function in that post, and that he was returning to his former position of Maintenance Superintendent. The first paragraph of the letter reads as follows:
The Housing Authority is now free to employ Bill Soileau as Executive Director. On June 30,1977,1 instructed my attorneys to amend the law suit which I filed against the Authority, changing the nature of the suit from one seeking an injunction to one seeking damages. Since the last official action of the Board is the Resolution relieving me of my duties as Executive Director, returning me to my former position of Maintenance Superintendent, and hiring Bill Soiliau as Executive Director, I have now resumed my duties in the Maintenance Department.
We gather that during the period of time plaintiff functioned as Executive Director of the Authority, he was on a leave of absence from his position as Maintenance Superintendent, a civil service position, and that by his return he remained clothed with the rights and protection of a civil service employee. The effect of his notification to the Board and the relinquishment of the Executive Director’s post was to render moot all issues in the case.
In view of our decision, we do not find it necessary to consider defendant-appellant’s other specifications of error.
For the reasons assigned, the judgment of the trial court is reversed and the action of plaintiff-appellee, Ashton Giron is dismissed. Defendant-appellant is cast for all costs accrued prior to the filing of plaintiff’s first supplemental petition, and plaintiff-appellee is cast with all costs which accrued thereafter including the costs of this appeal.
REVERSED.

. As listed in defendant-appellant’s brief, its Specification of Errors and Issues are as follows:

SPECIFICATION OF ERRORS

ERROR NO. I

The trial court was manifestly erroneous in finding that the chairman of the Housing Authority had actual authority to enter into a five (5) year contract with plaintiff as the minutes of the Housing Authority do not reflect that authority was given.

ERROR NO. II

The trial court was in error in failing to hold that plaintiff’s election of remedies by praying for and being granted a “final” preliminary injunction precluded plaintiff’s subsequent amendment requesting damages for breach of contract.

ERROR NO. Ill

The trial court was manifestly erroneous in its factual findings and in error as a matter of law in failing to find that the preliminary injunction “cured” or “purged” the Housing Authority’s default and that plaintiff defaulted or, alternatively, refused to perform his contractual obligation when he tendered his June 30, 1977, “Letter of Resignation”.

ERROR NO. IV

The trial court was in error in holding that the preliminary injunction granted herein was not res judicata to a subsequent amendment seeking damages; the trial court denying the Housing Authorities peremptory exception.

ISSUES ON APPEAL

I.
Did the chairman of the Housing Authority have actual authority to enter into a five (5) year contract with plaintiff?
II.
Does a prayer for and the granting of a preliminary injunction preclude a subsequent amendment requesting damages for breach of contract?
III.
Did the preliminary injunction granted herein “cure” or “purge” the Housing Authority’s default and was plaintiff in default or did he refuse to perform his contractual obligations when he tendered his June 30, 1977, “Letter of Resignation”?
IV.
Was the preliminary injunction granted herein res judicata to a subsequent amendment of the same suit seeking damages?